[Civ. No. 6414.    Fourth Dist.    July 28, 1960.]

Estate of THEODORE FREDERICK KREY, Deceased. HERBERT KREY et al., Appellants, v. JEAN E. GAL-VAS et al., Respondents.

A. G. Van Deventer for Appellants.

Glenn & Wright and Robert L. Beecroft for Respondents.

SHEPARD, Acting P. J.—This is an appeal from a decree determining interest in the estate of the above named deceased, by which decree it is ordered that Herbert Krey et al., heirs of Theodore F. Krey, the above named deceased, succeed to a one-half interest in the estate, and that Jean E. Galvas et al., heirs of Emily C. Krey, the predeceased wife of said Theodore F. Krey, succeed to a one-half interest in said estate. The cause comes to us on an engrossed settled statement in lieu of both a reporter's transcript and a clerk's transcript. (Rule 7(b), Rules on Appeal.) The heirs of Theodore appeal.

In general substance, the facts are that Theodore F. Krey died, intestate, leaving neither issue, spouse, nor parents surviving, on or about March 9, 1958, in San Diego County, California, and had been a continuous resident of California since 1924. Said Theodore F. Krey was predeceased by his spouse, Emily C. Krey, in October, 1954. Theodore F. Krey and Emily C. Krey had been husband and wife continuously for more than 50 years, residing together during the entire marriage relation. Theodore F. Krey did not remarry after

the death of Emily C. Krey. There was no issue born of their marriage. Emily C. Krey died intestate without issue or parents surviving, and there was no probate proceeding as a result of her death.

The property of decedent, constituting the assets of this estate, was acquired solely by said decedent during coverture from the earnings of said Theodore F. Krey and from the proceeds of property so acquired, while said decedent was a resident of and domiciled in the common-law jurisdictions of the States of New York and Michigan, and prior to the time said decedent and said Emily C. Krey became residents of and domiciled in the State of California. Likewise any income received by the Kreys after they became residents of and domiciled in California came from said property so acquired in the common-law jurisdictions of New York and Michigan as above set forth. Neither decedent nor Emily C. Krey, his predeceased spouse, were gainfully employed after they became residents of and domiciled in the State of California.

The contention of the heirs of Theodore (appellants herein) is that all the property in decedent's estate had been earned in states where common-law property concepts prevailed; that said property was the separate property of Theodore F. Krey, and should therefore be distributed, as separate property, solely to the heirs at law of Theodore F. Krey under section 225 of the Probate Code of the State of California.

The contention of the heirs of Emily (respondents herein) is that the property subject to administration in the estate of Theodore F. Krey would have been community property if decedent and his predeceased spouse had been living in California when he accumulated said property from his earnings; that section 228 of said Probate Code and cases of the appellate courts of the State of California interpreting said section provide that decedent's property should be reclassified and given the community property or separate property status it would have enjoyed had it been earned and accumulated in the State of California, and distributed accordingly; that since decedent's property would have been community property if it had been earned in the State of California, it should be reclassified and distributed as community property, one-half to the heirs of Emily C. Krey and one-half to the heirs of Theodore F. Krey.

Appellants first contend, in their briefs to this court, that factually this case is not one to which section 228 of the Probate Code would, or should, apply.

As was said in *Estate of Perkins,* 21 Cal.2d 561, 569 [6-7] [134 P.2d 231] : "Since the right of inheritance is not an inherent or natural right but one which exists only by statutory authority, the law of succession is entirely within the control of the Legislature. (Citations.) The designation of heirs and the proportions which they shall receive are subject to the legislative will (citations), and until the death of the ancestor, the right of inheritance is not a vested one but a mere expectancy."

Next, it should be noted that California legislative and judicial philosophy has, from the first, recognized the existence of common or community property earned through the joint efforts of the husband and wife. (*Smith* v. *Smith,* 12 Cal. 216 [73 Am.Dec. 533].) In the very first codification of our laws in 1872, this recognition continued in the provisions of Civil Code, sections 163 and 164, to the effect that the earnings of the husband during the marriage relation should be community property. Successive amendments and enactments since that time have continued to reaffirm, activate and enlarge the California legislative policy, recognizing the wife's efforts as a contributing force in the family earning power. Our courts, while at times necessarily blocked by constitutional provisions relating to the status of property rights in property brought into California from other states (*Estate of Thornton,* 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343]), have nevertheless been aware of and quite apparently endeavoring to construe our state laws in accord with the policy above referred to. In pursuit of this general policy, the Legislature enacted the first legislation (Civ. Code, § 1386, par. 9, later changed to Civ. Code, § 1386, par. 8) which by successive changes ultimately became Probate Code, sections 228 and 229. The constitutional difficulties encountered by the Legislature in its several attempts to transmute into community property the property earned by married persons in common-law states, ultimately resulted in the enactment of Probate Code, section 201.5.

In applying Civil Code, section 1386, paragraph 8, our Supreme Court quickly recognized that the purpose of the Legislature was to provide that where both spouses die without lineal descendants, the inherited property should be shared equally by the respective families of the two spouses through whose efforts it was accumulated. (*Estate of Brady,* 171 Cal. 1, 3 [151 P. 275] ; *Estate of Hill,* 179 Cal. 683 [178 P. 710].)

Thus, in construing the character of the property for the purpose of applying sections 228 and 229 of the Probate

Code (successors of Civ. Code, § 1386, par. 8), the courts found no difficulty in stating that "In determining the character of property for the purpose of applying sections 228 and 229 of the Probate Code, it is the source of its acquisition, and not the nature of its ownership immediately before death, which is controlling." (*Estate of Reizian*, 36 Cal.2d 746, 749 [1] [227 P.2d 249].)

Full recognition of the legislative policy was enunciated by our Supreme Court in *Estate of Rattray*, 13 Cal.2d 702, 713 [91 P.2d 1042], where it is said: "It is apparent from the history of these code provisions and the various changes therein that ever since the amendment in 1905, wherein the origin or source of the property was first set up as one of the determining factors in the descent and distribution of the estate of a decedent dying intestate without issue, that there has been a consistent attempt to work out a reasonable, consistent scheme of distribution wherein upon the death of a decedent intestate without issue, instead of the whole property going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived. The scheme in general, as was fair and reasonable, provided that the separate property of a predeceased spouse should go back in its entirety to the relatives of said predeceased spouse, and that the community property of the spouses should be shared equally by the relatives of the predeceased spouse and the relatives of the surviving spouse since both spouses are deemed to have contributed equally to its acquisition."

Carrying forward the state's legislative policy, our Supreme Court said in *Estate of Perkins, supra,* 569-570 : "Sections 228 and 229 together provide for the succession of all property in which the predeceased spouse had some interest. Their scope is not limited to community property, and they have been construed as providing that upon the death of the survivor of the marriage, intestate and without issue, the property should go to the family or families of the spouse or spouses through whose efforts the estate was accumulated. (Citations.) By these sections, the court has said, the Legislature intended that a lineal descendant of the predeceased spouse should succeed to all property of the surviving spouse in which the predeceased spouse owned an interest; if there were no lineal descendants of either spouse, the property should then be divided equally between the respective families of the two spouses by whose efforts it was accumulated. If, however, the property

had originally come to the predeceased spouse by other means than his efforts during the existence of the marriage, such as acquisition before marriage, or by gift, devise, or bequest subsequent to the marriage, then the Legislature intended that such property should descend, upon the death of the survivor, entirely to the family of the predeceased spouse. (Citations.)

"The only way in which that legislative purpose may be given effect is by applying sections 228 and 229 to all property subject to probate proceedings in California, regardless of its prior status in a foreign jurisdiction. Implicit in this construction, of course, is the reclassification, for the purposes of succession only, of property acquired in the foreign jurisdiction in accordance with the community property law of California. Although this court in *Estate of Thornton,* 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343], held that section 164 of the Civil Code was unconstitutional insofar as it purported to reclassify the property of a spouse who acquired it in a common-law state and later brought it to California, the decision was expressly limited to a reclassification during the lifetime of the spouse. Such a change in the incidents and rights of the husband and wife in the property acquired by either of them, said the court, would constitute a disturbance of a vested right, and prior decisions concerning the effect of the statute prevented a determination that it was 'part of our succession laws and hence valid as a statute of succession.'

"Under sections 228 and 229 of the Probate Code, the issue or kindred of the predeceased spouse are statutory heirs of the surviving spouse, and their rights under those sections, do not vest until the death of the latter. (Citations.) The property acquired outside of this state during the marital relation is subjected to the laws of succession of California by the fact that, at the time of the death of the surviving spouse, he or she was domiciled within its borders; it may therefore be reclassified under the law of the domicile."

Under varying conditions our courts have recognized the soundness of the general policy decision in *Estate of Perkins* many times. (*Estate of Schnell,* 67 Cal.App.2d 268, 273 [154 P.2d 437] ; *Estate of Auclair,* 75 Cal.App.2d 189, 191 [170 P.2d 29] ; *Estate of Ball,* 92 Cal.App.2d 93, 100 [206 P.2d 1111] ; *Estate of Wedemeyer,* 109 Cal.App.2d 67, 72 [240 P.2d 8] ; *Estate of Hanson,* 126 Cal.App.2d 71, 76 [271 P.2d 563] ; *Paley* v. *Superior Court,* 137 Cal.App.2d 450, 461 [290 P.2d 617] ; *Estate of Rightmier,* 155 Cal.App.2d 52, 54 [317 P.2d 54] ; *Estate of Brenneman,* 157 Cal.App.2d 474 [321

P.2d 86]; *Estate of Reizian, supra; Estate of Abdale,* 28 Cal. 2d 587, 590 [170 P.2d 918]; *Estate of Allie,* 50 Cal.2d 794, 801 [329 P.2d 903].)

Probate Code, section 201.5, has, of course, no direct application to the case at bar since its immediate purpose was only to further activate and enunciate the general legislative policy, hereinbefore referred to, as between husband and wife. The amendment of 1957 by which the words "either husband or wife" were deleted and the words "any married person domiciled in this state" were substituted, makes no change in meaning as far as anything in the case here at bar is concerned. The heirs of Emily take, not by direct succession from her, but as the statutory heirs of Theodore.

In *Estate of Ball, supra,* the husband and wife accumulated a large estate outside of California and moved to California in 1917. The wife died in 1933 and the husband died in 1946. The trial court decreed heirship to the relatives of the wife in an undivided one-half interest in the personal property, and a like one-half interest in the heirs of the husband. The conditions in that case were similar to the case at bar. In affirming the decision of the trial court, the District Court of Appeal said, page 100, "The property acquired outside of this state during the marital relation is subjected to the laws of succession in California by the fact that, at the time of the death of the surviving spouse, he or she was domiciled within its borders; it may therefore be reclassified under the law of the domicile."

Other authorities cited by appellants contain nothing to disturb our views herein expressed. We are satisfied that the rule announced in the Perkins case and in the Ball case properly enunciate the legislative policy of this state as to the facts presented in the case here at bar, and that the decision of the trial court was correct.

The decree determining interest is affirmed.

Coughlin, J., and Shea, J. pro tem.,* concurred.

A petition for a rehearing was denied August 19, 1960, and appellants' petition for a hearing by the Supreme Court was denied September 20, 1960.

---

*Assigned by Chairman of Judicial Council.