[Civ. No. 21148. First. Dist., Div. Two. Oct. 21, 1963.]

Estate of R. J. PATELL, Deceased. ALAN CRANSTON, as State Controller, Petitioner and Respondent, v. RIYO-KO PATELL, Objector and Appellant.

Freed & Freed, Eli Freed, James L. Sammet, Freitas, Allen, McCarthy & Bettini and Carlos R. Freitas for Objector and Appellant.

Charles J. Barry, Chief Inheritance Tax Attorney, Milton D. Harris, Senior Inheritance Tax Attorney, and J. D. O'Hara, Associate Inheritance Tax Attorney, for Petitioner and Respondent.

SHOEMAKER, P. J.—This is an appeal from an order fixing the inheritance tax in the estate of R. J. Patell.

■ The parties have stipulated that R. J. Patell and Riyoko Patell were married August 3, 1927, in Japan. They established domicile in California in 1940, and R. J. Patell died testate June 2, 1960, domiciled in and a resident of Marin County, California, leaving as his surviving spouse Riyoko Patell, also a resident of Marin County. His estate consisted of real and personal property, all of which was situated in California and was acquired after marriage when he and his wife were domiciled in Japan.

An inventory and appraisement of the estate was filed on October 13, 1961, showing an appraisal of $556,436.97. On June 25, 1962, the inheritance tax appraiser for Marin County filed a report indicating that the clear market value of the property in the decedent's estate was $546,169.27, and that property of the value of $541,669.27 passed to Riyoko Patell, surviving spouse of the decedent.[1]

The inheritance tax appraiser found that of the property passing to Riyoko Patell, an amount equal to one-half of the clear market value of the property of the estate, or $273, 084.63, was not subject to inheritance tax. A tax of $15,942.62 was assessed against Riyoko Patell.

Riyoko Patell filed a timely election, pursuant to Probate Code, section 201.7, to take under the will rather than against it, as authorized by Probate Code, section 201.5. On July 3, 1962, she also filed timely objections to the report of the inheritance tax appraiser, therein contending that she owed no inheritance tax whatever for the reason that one-half of the property which passed to her was excluded from taxation under Revenue and Taxation Code, section 13552.5, and the remaining one-half was exempt from tax under Revenue and Taxation Code, section 13805. The State Controller filed a reply to these objections, asserting that sections 13552.5 and 13805 were mutually exclusive in operation; that the former section alone was applicable to the property passing to Riyoko Patell; and that, since the appraiser had correctly applied this section in computing the tax due, his report ought to be confirmed in its entirety.

---

[1]Upon the decedent's death, Riyoko Patell acquired joint tenancy property of the net value of $12,491.50, and was also the recipient under the decedent's last will, of a life estate in trust, with both a power to invade and a general power of appointment, in property valued at $529,177.77.

After a hearing, the court entered its order overruling the objections, confirming the report of the appraiser, and fixing the inheritance tax on Riyoko Patell's interest in the amount of $15,942.62.

We start with the agreement of the parties that the exclusion authorized by Revenue and Taxation Code, section 13552.5, was properly applied in computing the inheritance tax due on appellant's interest in the estate.

The sole point at issue is whether the property passing to appellant ought to have been afforded a separate and additional exemption pursuant to Revenue and Taxation Code, section 13805. In arriving at a solution to this problem, we must consider each section cited in the light of the other and as a part of the Legislature's comprehensive scheme.

Probate Code, section 201.5, provides that upon the death of a married person domiciled in California, one-half of all personal property and of all real property situated in California which was acquired by the decedent while domiciled elsewhere, but which would have been community property had it been acquired while he was domiciled in California, shall belong to the surviving spouse. The other one-half of such property is subject to the testamentary disposition of the decedent and, in the absence thereof, goes to the surviving spouse.

Revenue and Taxation Code, section 13552.5, provides that "Whenever a married person dies having provided by will for his surviving spouse and having also made a testamentary disposition of any property to which section 201.5 of the Probate Code is applicable ... and the surviving spouse is required to elect whether to share in the estate under the will or to take a share of the decedent's property under section 201.5 of the Probate Code, and the spouse elects to take under the will, the property thus taken up to a value not exceeding one-half of the value of any property to which section 201.5 of the Probate Code is applicable ... is not subject to this part." Revenue and Taxation Code, section 13555, provides that the remaining one-half of such property "is subject to this part."

All of the property in the decedent's estate was property to which Probate Code, section 201.5, was applicable. As we have noted, the provisions of the will favored appellant, hence she elected to take under the will, and thus qualified under Revenue and Taxation Code, section 13552.5, for an

inheritance tax exclusion in an amount equal to one-half the value of the property in the decedent's estate.

Appellant, however, goes on to insist that the remaining one-half of the property which passed to her is exempt from taxation under Revenue and Taxation Code, section 13805, which provides as follows: "Property equal in amount to the clear market value of one-half of the decedent's separate property shall, if transferred to the spouse of the deceased, be exempt from the tax imposed by this part. A transfer, for the purpose of this exemption, shall include a transfer of property in trust with a general or limited power of appointment in the surviving spouse. This exemption shall be in addition to all other exemptions under this part."

It is appellant's position that all of the property in the estate was separate property within the meaning of Revenue and Taxation Code, section 13805, because it was acquired while the decedent was domiciled elsewhere and thus cannot be considered community property. According to appellant, the mere fact that such property also fits within the description of the property afforded a tax exclusion under Revenue and Taxation Code, section 13552.5, is of no significance, inasmuch as this court must interpret the words "separate property" of section 13805 in accordance with their plain and literal meaning.

Respondent, on the other hand, contends that the property in the decedent's estate may not be viewed as "separate property" within the meaning of Revenue and Taxation Code, section 13805, for the reason that said property must be treated substantially like community property, pursuant to Probate Code, section 201.5, upon the decedent's death. This contention appears sound and reasonable.

In *Estate of Ball* (1949) 92 Cal.App.2d 93 [206 P.2d 1111], the court held that property falling within the description of Probate Code, section 201.5, was community property for purposes of succession under Probate Code, sections 228 and 229. This holding was recently reaffirmed in *Estate of Krey* (1960) 183 Cal.App.2d 312, 318 [6 Cal.Rptr. 804]. In *Paley* v. *Superior Court* (1955) 137 Cal.App.2d 450, 453-454 [290 P.2d 617], the court referred to the property described in Probate Code, section 201.5, as "quasi-community property." The court stated that upon the death of either spouse, such property "was automatically reclassified as community property ... for purpose of succession." (P. 461.)

Appellant contends, however, that a reclassification for pur-

pose of succession need not necessarily constitute a reclassification for purposes of taxation. She urges that the Legislature may well have intended to treat community property and ''quasi-community property'' similarly for purposes of succession and yet tax them in an entirely different manner. We are not persuaded by this argument.

In *In re Miller* (1947) 31 Cal.2d 191 [187 P.2d 722], our Supreme Court was called upon to determine whether similar phrases appearing in former section 201.5 of the Probate Code, and in section 1, subdivision (2) of the Inheritance Tax Act of 1935 (Stats. 1935, p. 1266) ought to be construed in a similar manner. In holding the same interpretation applicable to both provisions, the court stated: ''In this connection certain general observations favoring a like construction of the comparable statutory language appear pertinent. As with a succession statute, death is the 'generating source' for the operation of the inheritance tax, consistent with the commonly accepted theory that such tax is imposed on the right to receive a decedent's property. (28 Am.Jur. §§ 9 and 10, p. 12.) While such tax is assessed upon the value of property so transmitted, the rates and exemptions are based upon the relationship of the recipient to the decedent. (28 Am.Jur., § 4, p. 9.) Accordingly, a cardinal purpose of the inheritance tax law would be to coordinate its assessment as closely as possible with the substantive probate law regulating the distribution of the decedent's estate.'' (P. 199.)

When the language above quoted is applied to the present case, we conclude that the words ''separate property,'' as used in Revenue and Taxation Code, section 13805, were intended to refer only to property acquired through gift, devise, bequest, or descent, and not to property which falls within the description of Probate Code, section 201.5. As this latter class of property is treated as community property for purposes of succession, certainly it ought not be classified as separate property under the related sections of the Revenue and Taxation Code. Moreover, we are satisfied that the Legislature intended no such result. Had it been the legislative intent to classify the property defined in Probate Code, section 201.5, as separate property for the purposes of taxation, there clearly would have been no need whatever to enact a separate section (Rev. and Tax. Code, § 13552.5) dealing specifically with 201.5 property. Neither is there any merit to appellant's contention that 201.5 property qualifies for dual tax benefits because it must be viewed as

separate property within the meaning of Revenue and Taxation Code, section 13805, and as 201.5 property within the meaning of Revenue and Taxation Code, section 13552.5. Had the Legislature intended any such result, the only reasonable assumption is that it would have dispensed with Revenue and Taxation Code, sections 13552.5, 13554.5, and 13555, and merely enacted a single section providing that "there is no inheritance tax on property subject to Probate Code, section 201.5, which is transferred from a decedent to his surviving spouse."

The cardinal rule of statutory construction is that the court should ascertain the intent of the Legislature and construe the implemental portions of an act in such a manner as to effectuate the desired objective. (*Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *California Toll Bridge Authority* v. *Kuchel* (1952) 40 Cal.2d 43, 53 [251 P.2d 4].) It is also settled that "[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." (*Stafford* v. *Los Angeles etc. Retirement Board* (1954) 42 Cal.2d 795, 799 [270 P.2d 12].) Where two interpretations of a statute are possible, the court ought to favor that which will lead to the more reasonable result. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463].)

Applying these principles to the instant case, we hold that the words "separate property," as used in Revenue and Taxation Code, section 13805, cannot be deemed applicable to property falling within the description of Probate Code, section 201.5.

The order appealed from is affirmed.

Agee, J., concurred.

A petition for a rehearing was denied November 4, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1963.