[Civ. No. 11387. First Appellate District, Division One.—July 23, 1940.]

In the Matter of the Estate of CHARLES J. WILSON, Deceased. JENNIE HENDERSON et al., Appellants, v. MAISIE E. FIELD, Respondent.

I. F. Chapman and Tom F. Chapman for Appellants.

Jacobs, Blanckenburg & May for Respondent.

KNIGHT, J.—This is an appeal from the decree of final distribution entered in the matter of the estate of Charles J. Wilson, deceased, the question involved being whether under the provisions of section 228 of the Probate Code appellants were entitled to one-half of the estate.

Martha Wilson, the decedent's wife, died in 1920 in Alameda County, intestate and without issue. She was survived by her husband and her mother, Mrs. Enke, a resident of Denmark. Sixteen years later and on November 12, 1936, Charles J. Wilson died in Alameda County, a widower, intestate and without issue, leaving surviving him as sole heir and next of kin a sister, Maisie E. Field of San Francisco. During the administration of his estate and prior to the distribution thereof Mrs. Enke died. She was survived by five adult children, one living in Canada and the remaining four in Denmark; and following the death of their mother they asserted a claim to one-half of the Charles J. Wilson estate upon the ground that the property to be distributed therein was community property of the decedent and his predeceased spouse, Martha Wilson. The probate court held adversely to their claim. The basis of its decision was that Mrs. Enke by an instrument in writing theretofore executed and delivered by her to the said Charles J. Wilson, in consideration of the payment to her by him of the sum of $500, had deeded and assigned to him all of her rights and interests in and to all community property belonging to him and his predeceased spouse; and that since the provisions of said section 228 under

which Mrs. Enke's children were claiming gave them no greater rights than she possessed thereunder, they were not entitled to any portion of the Charles J. Wilson estate. Thereupon the court distributed the residue of his estate, consisting of $4,365.97 in cash, a watch, two chains and a charm, to his sister, Maisie E. Field. We find no merit in appellants' contention that the probate court erred in its decision.

The facts of the case are not disputed, and for all purposes of the appeal they may be summarized as follows: Some considerable time after the death of his wife Martha, the exact date not appearing, Wilson obtained letters of administration in the matter of her estate, and on April 5, 1926, all property administered upon therein was distributed to him. It consisted of six lots in Berkeley, and approximately $7,500 in cash. The law of succession in effect at that time provided that upon the death of the wife the entire community property, without administration, belonged to the surviving husband (sec. 1401, Civ. Code) ; and in its decree of final distribution entered therein the probate court found that the whole of the estate of Martha Wilson was community property, but that at the time of her death, title thereto stood of record in her name, and that such was the reason for administering upon her estate. Furthermore, the court found that "if the same was separate property" Wilson as surviving husband was entitled to one-half thereof, and that Mrs. Enke as surviving mother was entitled to the remaining half, but that on February 26, 1925, she had executed and delivered to Wilson "a quitclaim deed and assignment of all her rights, title, interest, estate and claim of, in and to the property, real and personal, of the said estate of Martha Wilson . . . and to all residue thereof, including all property hereinafter discovered, and that said Charles J. Wilson is now the owner and holder of all right, title, and interest of said mother of said deceased in and to the estate of said deceased"; and accordingly all of said real and personal property was distributed to him. At the time of Wilson's death ten years later these same lots became a part of his estate, and during administration were sold for $4,250. The rest of his estate, except for the few personal articles above mentioned, consisted of a bank deposit of $1468.66, which his administrator alleged "on information" was part of the money the decedent had received on final settlement of his wife's estate.

The instrument referred to by the probate court in the rendition of its decree in the Martha Wilson estate was before the probate court at the time of the distribution of the Charles J. Wilson estate, and is made part of the record on appeal herein. It appears therefrom that it was executed and delivered by Mrs. Enke to Charles J. Wilson in consideration of the payment to her by him of the sum of $500. By its terms Mrs. Enke first ''remised, released, and forever quitclaimed'' unto him ''and to his heirs and assigns forever'' said six lots, describing them; then followed the assignment in broad terms which reads: ''And in further consideration of the money received as hereinbefore referred to, said first party does hereby transfer, set over, and assign unto the said second party all of her right, title, and interest in and to all of the property, personal and otherwise of the estate of Martha Wilson, . . . and request that when distribution of said estate is made that the whole thereof be distributed to her surviving husband, Charles J. Wilson. To have and to hold all and singular the above mentioned and described premises, together with the appurtenances and all of said interest in said personal property unto the said party of the second part, his heirs and assigns forever.'' From the evidence before it the probate court found that by the execution and delivery of said quitclaim deed and assignment the community property belonging to the decedent and his predeceased wife ''was converted into separate property of Charles J. Wilson; that said instrument conveyed any and all after acquired title and it was the intention of the parties thereto so to do . . . ''

The position taken by appellants is that the instrument in question is strictly a quitclaim deed, and that such a deed passes only a present title or interest in the grantor, and has no effect on an after-acquired title. In other words, appellants argue that by said instrument their mother surrendered only her right to succeed to a portion of her daughter's estate, without any intention thereby to pass any after-acquired title to any interest in the estate of her daughter's husband upon his death. As stated, however, in the note found in 58 American Law Reports, at page 361: '' . . . if there are recitals or covenants in the deed showing an intention not to limit the interest conveyed to that merely which the grantor then had, or expressly or impliedly affirming the

existence of a particular estate which the parties intended should pass by the conveyance, the grantor may be estopped from asserting an after-acquired title or interest in contradiction of the terms or implications of the deed, even though the granting clause was in the form of a quitclaim. Thus, although an ordinary quitclaim deed will not estop the grantor from asserting an after-acquired interest, yet a distinct recital in such a deed, showing that the parties proceeded on the theory that a particular interest was thereby conveyed, may be as effectual to create an estoppel as a warranty. And it has been said that, while as a general rule a conveyance by a quitclaim deed will not operate to pass a subsequently acquired title of the grantor, this principle is applicable only to a quitclaim deed in the strict and proper sense of that species of conveyance; that, if the deed bears upon its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and the bargain proceeded upon such footing between the parties, then, although the deed may not contain covenants of title, the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him with respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least to estop them from ever afterwards denying that he was seised of the particular estate at the time of the conveyance.''

Here it is apparent that the form and substance of the instrument in question take it beyond the limitations of a quitclaim deed. As pointed out by appellants, it is entitled ''quitclaim deed *and assignment*'' (italics ours); and as will be seen from a mere inspection of the instrument the entire last half thereof, including the *habendum* clause, covers subject-matter in no way essential to the validity of a quitclaim deed. Obviously, therefore, if it had been intended that the legal effect and operation of said instrument was to be restricted to that of a quitclaim deed there would have been no reason whatever to add thereto the last half thereof embodying the assignment. Moreover, the broad terms employed in framing the assignment portion of the instrument in themselves clearly show an intention to convey all interest, present and prospective, which Mrs. Enke may have then

had in any of the property about to be distributed in the Martha Wilson estate. Thus the instrument was made to read: " . . . said first party does hereby transfer set over, and assign unto said second party all her right, title, and interest in and to all of the property, personal and otherwise of the estate of Martha Wilson". Then again, as heretofore pointed out, under the law of succession as it stood at the time of Martha Wilson's death, all community property passed to her husband without administration; and at that time also subdivision 8 of former section 1386 of the Civil Code provided practically the same as section 228 of the Probate Code does now, so far as it could have affected the present situation; and that being so, the only apparent purpose Wilson could have had in obtaining a deed and assignment from Mrs. Enke to this same property, which already belonged to him by operation of law, was then and there to acquire from her any after rights which might accrue to her upon his death under the provisions of said subdivision 8 of section 1386. Such was the construction placed upon the instrument twice by the probate court, first at the time of the distribution of the Martha Wilson estate, and secondly at the time of the distribution of the Charles J. Wilson estate; ▉ and it is a well-settled legal doctrine that when the construction given an instrument by a trial court appears to be reasonable and consistent with the intention of the parties making it, courts of appellate jurisdiction will not substitute another interpretation, even though it seems equally tenable. (*Estate of Bourn,* 25 Cal. App. (2d) 590 [78 Pac. (2d) 193]; *Teater* v. *Good Hope Dev. Corp.,* 14 Cal. (2d) 196 [93 Pac. (2d) 112]; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.,* 212 Cal. 576 [300 Pac. 34]; *Estate of Boyd,* 24 Cal. App. (2d) 287 [74 Pac. (2d) 1049].) ▉ After having considered all of the circumstances of the present case we find nothing in the arguments advanced by appellants which would justify the conclusion that the construction so given the instrument by the probate court is at all unreasonable or in any manner inconsistent with the intention of the grantor thereof.

The decree appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 19, 1940.