[Civ. No. 5812.   Fourth Dist.   May 16, 1958.]

Estate of ADOLPH H. ANDERSON, Deceased.   MABEL M. BRUYN et al., Appellants, v. H. G. MALM, as Vice Consul for the Kingdom of Sweden, etc., et al., Respondents.

Robert B. Burch, Jr., and Davies & Burch for Appellants.

Brooks Crabtree and Crabtree & Lindsley for Respondents.

GRIFFIN, J.—Lillian Anderson, wife of Adolph H. Anderson, died intestate in 1938 and left surviving her, her husband, and appellants, a brother, sister, and two daughters of a deceased brother.   At the time of her death she owned property standing in her name in San Diego County.   It had been formerly held in joint tenancy with her husband.   In 1928 he deeded all of his interest to his wife.   Her estate was probated.   She also owned an interest in farm property in Iowa.

Appellants, in consideration of Mr. Anderson selling to them or giving up any interest he had in the Iowa property plus $1,000, agreed to sell to him or to make no claim to her

estate in San Diego. To effect this agreement appellants assigned to Mr. Anderson all their interest in her estate and in her personal property. They also executed a quitclaim deed of the San Diego real property to him, which was duly recorded. The assignment was filed in the probate proceedings in Mrs. Anderson's estate and the court distributed the whole of the San Diego estate to Mr. Anderson and made a finding that such property was the community property of Mr. and Mrs. Anderson.

Mr. Anderson died on October 16, 1955, and his estate is being administered by respondent public administrator. It includes the proceeds of the real property in question, appraised at $10,050, out of total assets of $11,739.72. On February 27, 1957, appellants filed a petition for an order to determine interest in the estate. Respondent H. G. Malm, Vice Consul for the Kingdom of Sweden, filed an answer to such petition, representing Wilhelmina Nordstrom, a resident of Sweden and a sister of Mr. Anderson. The petition and answer thereto were heard on the regular probate calendar and the court made its order determining interest in the estate and determining heirship, wherein it was decreed that Wilhelmina Nordstrom was entitled to inherit all of the estate of Adolph E. Anderson. No evidence was presented at the hearing except that by stipulation the original and copies of letters from the file of Attorney H. P. Larson Beck, who probated Mrs. Anderson's estate, were read to the court. These letters, together with the assignment and/or deeds showed an agreement between appellants and Mr. Anderson wherein Mr. Anderson sold, transferred, assigned or gave up his claim to the Iowa property for a consideration and appellants sold, transferred, assigned or gave up whatever interest they had in Mrs. Anderson's estate. Appellants now appeal from the court's order determining interest in the estate and determining heirship, and contend that the court should have divided the estate, so far as attributable to the community real property, giving one-half thereof to appellants and one-half to Wilhelmina Nordstrom.

Appellants contend that the assignment and quitclaim deed given by appellants to Mr. Anderson, after the death of Mrs. Anderson, had no effect on appellants' right to inherit in Mr. Anderson's estate, and the court erred in finding that it was the intention of the parties by the execution and delivery of said assignment and deed, to convert all community property belonging to Mr. Anderson and his wife, his pre-

deceased spouse, into separate property of Mr. Anderson, and to convey to him any and all present and/or after-acquired title of appellants and each of them, and that the court erred in decreeing that appellants had no interest in Mr. Anderson's estate and declaring the sister, Mrs. Nordstrom, was the sole heir and entitled to distribution of his entire estate.

It must be conceded that, except for the evidence as to the intention of the parties, the assignment, and quitclaim deed executed by appellants, they would be heirs of Mr. Anderson and entitled to share in his estate under section 228 of the Probate Code. That section provides that if neither decedent nor his predeceased spouse left children or descendants of children surviving, then one-half of the community property of decedent and the previously deceased spouse shall go to certain heirs of the predeceased spouse and the other half to certain heirs of the decedent. Section 229 thereof provides that if decedent left no issue and the estate was separate property of the previously deceased spouse, all of such property goes to certain heirs of the predeceased spouse. It therefore becomes important to determine whether or not the assignment and quitclaim deed, when considered in connection with other evidence, had any effect on appellants' right to inherit from Mr. Anderson's estate. The original letter, dated March 20, 1938, signed by appellant Fred Root and directed to Mr. Anderson, after expressing condolence over the death of Mrs. Anderson, reads in part:

"As for the house or any other property out there (San Diego) you can do as you think best with it as far as I am concerned . . . I don't know what the California laws are in regard to the settlement of property out there that was in her name. I am willing you should have it and go ahead and try to finish paying for it so you will have a home."

On July 6, 1938, an attorney in Iowa wrote Mr. Anderson saying:

"Mr. Fred Root and Mrs. Bruyn were in the office discussing the matter of your wife's property both here and in California. They stated that you had informed them that they had inherited some interest in her property in California, and that you would like to have them sell out to you so that the California property would be yours absolutely. Of course, this is the proper thing to do, as you do not want them to own part of your home. . . .

"Please think this matter over and let us know what your ideas are in regard to selling out your interest in the farm

here and their selling out their interest in the property in California.''

On July 13, 1938, Mr. Beck, Attorney for the Estate of Lillian Anderson, in California, wrote appellants' attorney:

''. . . I understand from your letter that it is the desire of your clients, relatives of the deceased, that whatever interest they may have in the estate of the above-named deceased here in California should be taken as a set-off against the interest Mr. Anderson may have in the 147 acre farm in Iowa.''

Then follows a statement that Mrs. Anderson's estate in California was appraised at $3,000, and Mrs. Anderson and her husband were indebted in the sum of $3,085.54, including a loan on the house, funeral and doctor bills, etc.; that Mr. Anderson thought it almost hopeless to pay off these claims; that since the house was the home of Mr. and Mrs. Anderson for so many years, for sentimental reasons, he felt he should carry on; that there was little or no equity for the heirs, and that a reply was requested. On July 18, 1938, appellants' attorney replied and said appellants were surprised when Mr. Anderson told them they might have some interest in the estate in California. They suggested there might be some way for him to buy them out and they buy out his interest in the Iowa farm; that they would cooperate with Mr. Anderson in every way; that Mrs. Anderson's estate in Iowa (one-fourth interest in the ranch) was being probated there and no final settlement could be made until the estate there was closed, which would be about May, 1939. On August 5, 1938, Beck replied that Mr. Anderson had authorized him to state that Mrs. Anderson's interest in the farm would be approximately $2,000; that he was not aware of the laws of Iowa as to what, if any, interest he would be entitled to, but Mr. Anderson was willing to dispose of his interest to them in the farm for $1,000 if the heirs would quitclaim any interests they might have in the San Diego property; that he believed the court in California would construe the home to be community property; that the Iowa heirs could not possibly obtain any inheritance out of the property in San Diego because of the ''surviving husband taking all.'' On August 8th, Beck received a reply indicating willingness on the part of the Iowa heirs to the transaction, but insisting that the $1,000 be paid into escrow and placed with Mr. Anderson's deed of the Iowa property until time for filing claims in Mrs. Anderson's estate had expired. On

September 30th, appellants' attorney replied, giving the names and addresses of all possible heirs, and stated he had prepared a quitclaim deed for Mr. Anderson to sign. It appears that the attorney for Mr. Anderson was requested to send a form of quitclaim deed for the heirs to sign, quitclaiming any interest in the San Diego property. A form of assignment and memorandum of agreement and quitclaim deed were enclosed for Mr. Anderson's signature. On October 11th, Mr. Beck acknowledged receipt of them and stated that Mr. Anderson had executed them. On May 22, 1939, appellants' attorney wrote back and informed him that the estate there had been closed and they were mailing the assignment and quitclaim deed of appellants' interest in Mrs. Anderson's estate in California. The assignment, subscribed by the appellants, reads in part:

"... the undersigned ... for value received, do hereby sell, assign, transfer and set over to Adolph H. Anderson, all their right, title and interest, ... in and to the assets of the estate of said Lillian Anderson, Deceased, Probate file No. 25289 ... San Diego, ... and hereby waive and quitclaim ... any and all their right, title and interest in and to the distribution of said estate. ...

"... and ... do ... sell, assign, transfer, and set over to said Adolph H. Anderson all their right, title and interest ... in and to all personal property ... belonging to said Lillian Anderson, deceased, at the time of her death ... now located (in) ... San Diego".

The quitclaim deed read:

"... for and in consideration of One Dollar and other valuable consideration, being a settlement of the rights of the grantors and the grantee in the estate of Lillian M. Anderson, deceased, do hereby quitclaim to Adolph H. Anderson all that property situated in the city of San Diego ... (describing it)."

Upon this evidence the court found that it was the intention of the parties to convert all community property belonging to Mr. Anderson and Lillian Anderson into separate property of Mr. Anderson, and to convey to him any and all present and/or after-acquired title of appellants and each of them. It found they had no interest in Mr. Anderson's estate and declared Mrs. Nordstrom to be his sole heir and entitled to distribution of his entire estate.

Appellants concede that *Estate of Wilson,* 40 Cal.App.2d 229 [104 P.2d 716], predicated upon a somewhat similar

situation, arrived at a result contrary to that for which they here contend, but claim *Sears* v. *Rule,* 27 Cal.2d 131 [163 P.2d 443], supports their position and is the controlling authority.

It is true, in the Wilson case, the quitclaim deed did remise, release and quitclaim to the grantor "and to his heirs and assigns forever . . . To have and to hold . . . unto the said party of the second part, his heirs and assigns forever" the property there involved. These additional terms were not used in the instant quitclaim deed. The court there held that the trial court was justified in holding such an assignment converted the property into separate property of the grantee. The Wilson case quoted the general rule in 58 American Law Reports page 361, that:

" '. . . if there are recitals or covenants in the deed showing an intention not to limit the interest conveyed to that merely which the grantor then had, or expressly or impliedly affirming the existence of a particular estate which the parties intended should pass by the conveyance, the grantor may be estopped from asserting an after-acquired title or interest in contradiction of the terms or implications of the deed, even though the granting clause was in the form of a quitclaim. Thus, although an ordinary quitclaim deed will not estop the grantor from asserting an after-acquired interest, yet a distinct recital in such a deed, showing that the parties proceeded on the theory that a particular interest was thereby conveyed, may be as effectual to create an estoppel as a warranty. And it has been said that, while as a general rule a conveyance by a quitclaim deed will not operate to pass a subsequently acquired title of the grantor, this principle is applicable only to a quitclaim deed in the strict and proper sense of that species of conveyance; that, if the deed bears upon its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and the bargain proceeded upon such footing between the parties, then, although the deed may not contain covenants of title, the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him with respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least to estop them from ever afterwards denying that he was seised of the particular estate at the time of the conveyance.' "

The court there held that the form and substance of that instrument took it beyond the limitation of a quitclaim deed.

It was entitled "Quitclaim Deed and *Assignment*." The terms of the assignment showed an intention to convey all interest, present and prospective, which the grantor had in any of the property about to be distributed in the estate. In considering the question the court said that under the law of succession, all community property passed to her husband without administration; that being so, the only apparent purpose the grantee could have had in obtaining a deed and assignment of the property from the grantor, which already belonged to the grantee, by operation of law, was to then and there acquire from her any after-rights which might accrue to her on his death under section 228 of the Probate Code.

In the Sears case there was a possible contest of a will and there was an agreement of settlement with the heirs of the estate forever settling and determining the dispute, and to prevent a contest a release and quitclaim of this right was executed. The Supreme Court distinguished the facts from the Wilson case and in upholding that transaction and the judgment of the court in that case, said that a quitclaim deed by a deceased husband's heirs to his widow in compromise of a rival claim (settling a will contest) does not make her a purchaser of the property formerly held by her husband. It did not overrule the Wilson case but held it was not inconsistent with its ruling in the Sears case, and that it depended upon the intention of the parties as gleaned from the evidence and instruments themselves. It reaffirmed the rule set forth in the Wilson case and authorities there cited, holding that when the construction given an instrument by a trial court appears to be reasonable and consistent with the intention of the parties making it, courts of appeal will not substitute another interpretation even though it seems equally tenable.

Construing the letters in conjunction with the assignment and in support of the judgment here entered, it affirmatively appears that the parties were desirous of selling, assigning and transferring to each other, any claimed interest they may have had in and to the property of Mrs. Anderson. It was not solely a release of any possible interest. One letter said that one of the heirs was willing that Mr. Anderson "should have it" ("her property out there") and their attorney said it was the proper thing "to have them sell out . . . so that the California property would be yours (Mr. Anderson's) absolutely," and in turn they would buy out his interest in the Iowa farm for $1,000. Apparently this was

the agreement intended. The assignment executed in response to it was that they do *"hereby sell, assign, transfer and set over"* to Mr. Anderson their right, title and interest in the assets of the estate in its entirety, both real and personal. Although the quitclaim deed did not use the word "sell and assign" it quitclaimed the real property to them as being a settlement of the rights of the grantor and grantee in the estate.

In *Touchard* v. *Crow*, 20 Cal. 150 [81 Am.Dec. 108], it was held that the operative words of release in a simple quitclaim deed are "remise, release and quit claim"; that where the words "bargain, sell and quit claim" are employed, they operate not merely to release, but to transfer any interest which the grantor possesses at the time of the execution of the deed.

In determining the proper construction as to the intent of the parties, the trial court was authorized to take into consideration all instruments involving the transaction. It cannot be said, as a matter of law, that the construction given them was unreasonable and not in accord with the intent of the parties.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.