241 Cal.App.2d 496 (1966)
50 Cal. Rptr. 622
Estate of ELIZABETH J. BLUME, Deceased.
AUGUSTA AUSTIN et al., Claimants and Respondents,
v.
THE PEOPLE, Objector and Appellant.
Docket No. 23072.
Court of Appeals of California, First District, Division One.
April 14, 1966.
*497 Thomas C. Lynch, Attorney General, and John E. Barsell, Jr., Deputy Attorney General, for Objector and Appellant.
Bertha Ast and William B. Boone for Claimants and Respondents.
SIMS, J.
The State of California, a claimant to the estate of the decedent under the provisions of section 231 of the *498 Probate Code,[1] has appealed from a judgment (decree determining interests in estate, §§ 1080-1082) which awards all of the estate to respondents, who, as relatives of the previously deceased spouse of the decedent, claim the right to succeed to the estate under the provisions of section 229[2] because it consists of property which was the separate property of that spouse.
The state contends (1) that one-half of the property was acquired by the decedent by purchase from the heirs of the previously deceased spouse and therefore is not subject to the provisions of section 229; (2) that the deed by which the decedent acquired the foregoing interest also conveyed to her and the heirs of her own separate property any interest which the heirs of her previously deceased spouse might otherwise have in the one-half of the property which she acquired by descent; and (3) that in any event respondents failed to establish that the personal property in the estate was the separate property of the previously deceased spouse. For the reasons hereinafter set forth it is concluded that the judgment must be reversed on the grounds set forth in the first and third contentions of appellant.
No testimony was received at the hearing held on the petition to determine heirship filed by one of the respondents. The evidence consisted of the court file of the administration of the estate of the previously deceased spouse, a deed from his brothers and sisters to the decedent, the respective statements of claim filed on behalf of respondents and the state, and the petition itself.
The trial court found: "The property in question was originally the separate property of the predeceased spouse ... who died intestate on December 19, 1931, leaving him surviving *499 Elizabeth J. Blume as his widow." This finding is not controverted insofar as the real property left by the decedent is concerned. The state's attack on this finding insofar as it relates to her personal property is hereinafter discussed.
The finding, "Decedent ... died intestate on January 8, 1963, without spouse or issue" is admittedly correct.
No express finding was made as to the manner in which the title to the real estate, as the separate property of the previously deceased spouse, passed on his death. The decree of distribution of his estate recited, "said decedent died intestate and left surviving him as his heirs at law ... his surviving widow [and naming them] brothers and sisters..." It is conceded by all concerned that this property passed one-half to his widow, the present decedent, and one-half to the named brothers and sisters. (§§ 220 and 223.)
The findings refer to, and the record reflects, that a deed was executed by the brothers and sisters four days after the death of the previously deceased spouse, which deed granted to the surviving widow real property of the same description as that which is now a part of her estate. The effect of the terms of this deed on the one-half interest which passed to the widow on the death of her husband is hereinafter discussed. The decree of distribution in the estate of the previously deceased spouse referred to this deed and found that the surviving widow thereby became entitled to have the whole of her deceased husband's estate distributed to her.

The one-half interest in the separate property of her previously deceased spouse, which the decedent acquired by grant, escheats to the state as her separate property
[1a] It is clear from the foregoing that on the death of the previously deceased spouse title to one-half of his property vested in his brothers and sisters (§ 300). [2] Section 229 (see fn. 2), grants the designated relatives of the previously deceased spouse the right to succeed to property that was formerly the separate property of such spouse, insofar as such property is part of the estate of the intestate surviving spouse. The section, however, does not purport to include all property which may at some time or another have been separate property of the previously deceased spouse, but its application is limited to such property as "came to the decedent from such spouse by gift, descent, devise or bequest ..." or by other means not pertinent here. [3] It is established that where *500 property of a previously deceased spouse vested in others from whom it came to the surviving spouse, the provisions of section 229 are not applicable to the property as found in the latter's estate. "If the predeceased spouse was the source of title held by the surviving spouse at the time of the latter's death, distribution is made to the relatives of the predeceased spouse. On the other hand, even though the property originally may have been owned by the predeceased spouse, from whom it was obtained by the surviving spouse in the manner designated by the statute, i.e., gift, descent, devise, etc., if the latter at the time of death owned the property by virtue of an intervening source, i.e., `a new title,' distribution is made to the relatives of the surviving spouse. (Estate of Abdale, supra, 28 Cal.2d 587, 591 [170 P.2d 918]; Estate of Putnam, 219 Cal. 608 [28 P.2d 27]; Estate of Flood, 55 Cal. App.2d 410 [130 P.2d 811].)" (Estate of Bishop (1962) 209 Cal. App.2d 48, 59 [25 Cal. Rptr. 763] (hearing in S.Ct. denied).)
[1b] The fact that the surviving spouse in this case secured the property before distribution, whereas in Bishop she purchased after an interest had been distributed to other heirs of the predeceased spouse, cannot be determinative. The title to a one-half interest vested in the other heirs of the previously deceased spouse upon his death (§ 300). [4] General statements that the provisions of sections 228 and 229 "were intended to furnish one general plan of distribution based upon the same underlying fundamental principle, that the origin or source of the property should determine the distribution" (Estate of Rattray (1939) 13 Cal.2d 702, 714 [91 P.2d 1042]; and see Estate of Reizian (1951) 36 Cal.2d 746, 749 [227 P.2d 249]; Estate of Abdale (1946) 28 Cal.2d 587, 590 [870 P.2d 918]; Estate of Putnam (1933) 219 Cal. 608, 611 [28 P.2d 27]; Estate of Rudman (1948) 85 Cal. App.2d 270, 276 [193 P.2d 39]) can extend no further than the legislative declaration that the property must be that which "came to the decedent from such spouse." (§ 229; italics added.)
If this were a dispute between the heirs of the decedent's own separate property and the heirs of the separate property which devolved on her from her previously deceased spouse the issue might be clearer. Nevertheless, the fact that there are no heirs to take the former property and that it will therefore escheat to the state cannot serve to change the status of the property or justify a construction which would extend the application of the provisions of section 229 beyond their *501 express terms. In Estate of Roberts (1948) 85 Cal. App.2d 609 [194 P.2d 28], in applying the provisions of section 228, which divide the former community property of the decedent and the previously deceased spouse between their respective relatives, the court said, "as applied to the situation existing here, it being assumed that there is not in existence any one of the persons designated in section 228 as entitled to take what may be designated as the husband's half of the community property, and no next of kin of decedent to take under section 230, said one-half shall escheat to the state under section 231." (85 Cal. App.2d at p. 615; and see also Estate of Brady (1915) 171 Cal. 1 [151 P. 275] and Estate of Piper (1905) 147 Cal. 606, 607 [82 P. 246].)
[1c] It is concluded that the trial court erred in denying the claim of the state to the one-half interest in the real property.

The right of the descendants of the brothers and sisters of the previously deceased spouse to the one-half interest in the separate property of that spouse which the decedent acquired from him by descent is not defeated by the deed executed by their ancestors
A further finding that a "document dated December 23, 1931, executed by ... heirs at law of Edward P. Blume does not indicate that the signers thereof intended to divest themselves of any interest they would have in the estate of the widow ..." leads to the crux of the controversy. The evidence reflects that the document referred to is a deed whereby two brothers and two sisters of the previously deceased spouse as his heirs at law conveyed to his widow the real property which is now the subject of these proceedings. The description of the interests conveyed by the deed from the heirs reads as follows: "[A]ll of the right, title and estate and interest of the parties of the first part in and to all of the hereinafter described real property derived to them as heirs-at-law of the said Edward P. Blume deceased, together with all of their right, title, estate and interest, of every kind and nature in and to all of the rest and remainder of the estate of the said Edward P. Blume, deceased, and any interest that either of the said parties of the first part may hereafter acquire in said real property hereinafter described, in and to the remainder of the estate, both real and personal, if any there be, of the said Edward P. Blume, deceased."
*502 The state contends that the foregoing language served to convey any interest that the grantors might thereafter acquire in the property, including such interest as might have devolved on them under the provisions of section 229 if they had survived the grantee, and that respondents as the descendants of the grantors therefore are barred from asserting any such interest. It relies upon the provisions of section 1106 of the Civil Code which provides: "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." The identity of interest between the grantors and respondents on the one hand and between the decedent and the state on the other is implicit in this argument. In other words it is asserted that since the deed describes the whole of the property, if title to the whole or any portion thereof were to devolve on the grantors or respondents as their successors in interest, it would pass by operation of law as after acquired property to the state as the successor to the grantee's separate property; and that, therefore, it should be distributed to the state.
Estate of Wilson (1940) 40 Cal. App.2d 229 [104 P.2d 716] and Estate of Anderson (1958) 160 Cal. App.2d 552 [325 P.2d 670] lend some support to the view that a conveyance of an interest in the estate of the first spouse to die may bar the assertion of an interest in the same property on the death of the surviving spouse. In the former case the wife died intestate and left property standing in her name which the husband asserted was community property and claimed as sole heir. Prior to distribution in the wife's estate the surviving husband secured a deed from her mother in consideration of the payment of $500. "By its terms [the mother] first `remised, released, and forever quitclaimed' unto him `and to his heirs and assigns forever' said six lots, describing them; then followed the assignment in broad terms which reads: `And in further consideration of the money received as hereinbefore referred to, said first party does hereby transfer, set over, and assign unto the said second party all of her right, title, and interest in and to all of the property, personal and otherwise of the estate of [the wife], ... and request that when distribution of said estate is made that the whole thereof be distributed to her surviving husband, ... To have and to hold all and singular the above mentioned and described premises, together with the appurtenances and all of said interest *503 in said personal property unto the said party of the second part, his heirs and assigns forever.'" (40 Cal. App.2d at p. 232.) The property was distributed to the surviving husband as community property in the wife's estate, with a recital to the effect that if the property were the separate property of the wife the surviving husband had acquired all of the decedent's mother's interest by the quitclaim deed (id., p. 231). In the surviving husband's estate the court found that the children of the grantor-mother, who had survived the husband but died before his estate was distributed, could not claim an interest in the former community property which he left in his estate because the mother had conveyed to him all her interest in it. The court pointed out: "Then again, as heretofore pointed out, under the law of succession as it stood at the time of [the wife's] death, all community property passed to her husband without administration; and at that time also subdivision 8 of former section 1386 of the Civil Code provided practically the same as section 228 of the Probate Code does now, so far as it could have affected the present situation; and that being so, the only apparent purpose [the husband] could have had in obtaining a deed and assignment from [the mother] to this same property, which already belonged to him by operation of law, was then and there to acquire from her any after rights which might accrue to her upon his death under the provisions of said subdivision 8 of section 1386." (40 Cal. App.2d at p. 234.) The case has subsequently been limited to this ground. (Sears v. Rule (1945) 27 Cal.2d 131, 145 [163 P.2d 443].)
In Estate of Anderson, the surviving husband left real property which had been distributed to him as community property upon the death of his wife. Upon her death he had exchanged quitclaim deeds and assignments with her brother and sister and two nieces, the daughters of the wife's deceased brother, through which they relinquished all interest in the property in question, and he, in consideration of the further payment of $1,000, relinquished all right to property in Iowa in which his wife had been left an interest. The trial court reviewed the assignments and deeds and the correspondence between the parties and their attorneys as reflected in the files of the attorney who had probated the wife's estate. It concluded, as had the trial court in Wilson, supra, that the effect of the transaction was to convert all community property belonging to the spouses into the separate property of the surviving spouse, and awarded the property to the husband's *504 heirs to the exclusion of the relatives of the wife, who had executed the deed and assignment. This conclusion will not bear analysis. The property becomes the separate property of the surviving spouse because it is acquired by inheritance, or survivorship, and there is no longer a spouse in existence with whom to share an interest. The subsequent grants, quitclaims, assignments, etc., of others may affect the rights of those others under sections 228 or 229, but they can no more change the status of the property as it existed prior to the death of the first spouse than the leopard can change his spots. (See Estate of Adams (1955) 132 Cal. App.2d 190, 203 [282 P.2d 190]; and cf. Estate of Hanson (1954) 126 Cal. App.2d 71, 76-77 [271 P.2d 563].)
On appeal by the wife's relatives the court noted: "It must be conceded that, except for the evidence as to the intention of the parties, the assignment, and quitclaim deed executed by appellants, they would be heirs of [the husband] and entitled to share in his estate under section 228 of the Probate Code." (160 Cal. App.2d at p. 554.) The opinion then reviews those portions of Wilson which relate to estoppel from asserting an after acquired interest in contradiction of the implications of a deed, and which recite that the only effect the transaction could have, since the husband in any event was entitled to the community property, was to affect the grantors' right of inheritance. It distinguished Sears, supra, as also applying the rule of construing an instrument in a manner which appears to be reasonable and consistent with the intention of the parties and affirms the judgment by application of the last rule.
[5] From the foregoing may be distilled the limited rule that it is proper to deny those relatives of the previously deceased spouse, who have executed instruments which may be interpreted as conveying all interest then or thereafter to be acquired in certain property, from asserting such interest under the provisions of section 228, when property previously held by both spouses as community property is concerned, and possibly under the provisions of section 229 where the property was held as the separate property of the spouse first to die.
This principle cannot apply herein because in the first place the instrument when read as a whole is limited to such interest in and to the property as the grantors' may have as the "heirs at law" of the previously deceased spouse, or "in and to all of the rest and remainder of" his estate, or "any interest that *505 either ... may hereafter acquire in said real property hereinafter described in and to the remainder of the estate, both real and personal, if any there be" of said spouse.
In the second place the grantors are not claiming here. The respondents must establish their relationship to the previously deceased spouse as "descendants, by right of representation" of the grantors, but they take not as heirs of the previously deceased spouse, not as heirs of those who executed the grant, but as heirs of the decedent. [6] "Under sections 228 and 229 of the Probate Code, the issue or kindred of the predeceased spouse are statutory heirs of the surviving spouse, and their rights under those sections do not vest until the death of the latter. (Estate of Watts, 179 Cal. 20, 23 [175 P. 415]; Estate of Bixler, 194 Cal. 585, 595 [229 P. 704].)" (Estate of Perkins (1943) 21 Cal.2d 561, 570 [134 P.2d 231]; and in addition to the cases cited see Estate of McCauley (1903) 138 Cal. 546, 550 [71 P. 458]; Estate of Krey (1960) 183 Cal. App.2d 312, 318 [6 Cal. Rptr. 804]; Estate of Hanson, supra, 126 Cal. App.2d 71, 76; Estate of Marshall (1919) 42 Cal. App. 683, 686 [184 P. 43].) Until the death of the surviving spouse there was no vested right in respondents or in their progenitors to inherit the property, but only a mere expectancy. (Estate of Perkins, supra, 21 Cal.2d 561, 569; Estate of Krey, supra, 183 Cal. App.2d 312, 315.) Regardless of what equitable right may be created against a grantor by a purported conveyance of an expectancy (see Estate of Ryder (1903) 141 Cal. 366, 370 [74 P. 993]), and the questionable propriety of asserting such right in probate proceedings (id., p. 371), here there is no conveyance from or binding on those who now claim as heirs.
In Sears v. Rule, supra, the relatives of the previously deceased husband, as heirs entitled to share in the former community property found in the subsequently deceased wife's estate, sought to impose a constructive trust upon that property in the hands of the wife's brother and other relatives who allegedly had secured the property by obtaining distribution under invalid provisions of the wife's will. The latter asserted that certain agreements of settlement with heirs of his estate, which were executed by the relatives of the husband in consideration of a payment from the wife in order to prevent a contest of his will, precluded the assertion of any rights in the wife's estate under the provisions of sections 228 or 229. The opinion states: "We find nothing in these instruments that would constitute a bar to this action. Their purpose was to *506 settle a dispute over the estate of [the husband] and to prevent a will contest therein, and they disclose a typical case whereby the contestants relinquish their claims in the particular estate in return for a sum of money. The instruments refer repeatedly to plaintiffs' interest in the estate of [the husband] but make no mention whatsoever of plaintiffs' rights in the property of [the wife] after her death. It would be unreasonable to hold that by these instruments plaintiffs purported to surrender not only their claims to the estate of [the husband], but in addition, and by implication alone, their rights to succession in the estate of another person who was still alive at the time." (27 Cal.2d at pp. 144-145.) The opinion goes on to note (as distinguished from this case) that the wife did not thereby acquire a new title by purchase, but took the property in the same manner it would have passed "if neither the threatened contest nor the settlement ... existed" (id., p. 145). Estate of Wilson, supra, was then distinguished as noted above.
In Estate of Bishop, supra, it was similarly contended that the transfer to the surviving wife of the interest in the husband's separate property, which was inherited by his sons, served to bar the latter from asserting rights under section 229 in the wife's estate to that portion of the property which she acquired by inheritance on the husband's death. The court stated that Estate of Anderson, supra, and Estate of Wilson, supra, were inapplicable, and continued: "Two of the three sons predeceased [the surviving wife]; the deed merely described the 2 1/2-acre parcel; she already owned a one-third interest therein and the sons' ownership was limited to a two-thirds interest; no mention is made of any right of inheritance; and there is no evidence from which the court could have concluded that the grantors intended that the deed should affect any right to inherit from the grantee's estate. The contention to the contrary is without merit. (See Sears v. Rule, 27 Cal.2d 131, 143, 145 [163 P.2d 443].)" (209 Cal. App.2d at p. 60.)
The state acknowledges that the rule of the Bishop case controls the situation here. It contends that it should not be followed because it is erroneous and cannot be reconciled with the Wilson case; that in any event the express terms of the deed are not set forth in that opinion and those involved herein are broader; and that it violates the general rules applicable under Civil Code, section 1106. For the reasons set forth above these contentions must be rejected. The issue here *507 is not the after acquired title of those granting to the surviving wife (cf. Younger v. Moore (1909) 155 Cal. 767, 772-774 [103 P. 221]), but the independent right of respondents to claim an interest as her heirs, which was never surrendered by them.
The finding of the trial court in relation to the effect of the conveyance is sustained by the facts and applicable law. It properly awarded respondents the one-half interest in the real property which had come to the decedent as the heir of the separate property of her previously deceased spouse.

The personal estate was erroneously awarded to respondents
The record reflects that decedent left, in addition to the real property, personalty consisting of $4.56 in cash, $136.12 in a savings account, and $269.53 representing "Proceeds Metropolitan Insurance Company Policy." The only evidence concerning the $410.21 is the state's allegation on information and belief that decedent "left an estate consisting of her own separate property," and the statements of one of the respondents that she "cannot state whether this is community or separate property," that she and her co-respondent are entitled to all the property of the decedent, and that "At least a portion of said estate was separate property of ... the predeceased husband...." The court in its memorandum opinion, its findings and its judgment blanketed in the personal property without comment and awarded it to respondents as though it were property which had come to the decedent by descent as the separate property of her previously deceased spouse.
[7] It is established that "where the right of a person as heir depends not merely upon the fact of a certain relationship, but upon the fact of such relationship plus the fact that the property he claims as heir had formerly been either the community property of the decedent and his or her predeceased spouse or else the separate property of the latter, the burden of proof of showing such additional fact rests upon him. It is a fact which must appear in order that he be an heir, and he is an heir only as to property as to which it does appear. It is an essential element of his claim of heirship and he must affirmatively show it, just as in the ordinary case where heirship depends entirely upon relationship, the burden rests upon the claimant of proving the relationship which makes him an heir." (Estate of Simonton (1920) 183 Cal. 53, *508 60 [190 P. 442]; accord: Estate of Abdale, supra, 28 Cal.2d 587, 593; Estate of Bishop, supra, 209 Cal. App.2d 48, 54; Estate of Adams, supra, 132 Cal. App.2d 190, 196; and Estate of Hanson, supra, 126 Cal. App.2d 71, 77-78.) It is said that, "when the surviving spouse dies intestate, the presumption is that all property in his estate is his sole and separate property, and the one claiming it to be community [in the estate of the previously deceased spouse] must assume the burden of proving what portion of that estate was in fact the community property of the two parties at the time of the death of the predeceased spouse." (Estate of Adams, supra, 132 Cal. App.2d at p. 203.)
This last pronouncement has been questioned and is said to be countered, when it is shown some of the property came from the previously deceased spouse, by the presumption under section 164 of the Civil Code that property acquired during marriage is community property. (Estate of Torrance (1957) 154 Cal. App.2d 350, 358 [316 P.2d 94].) In the case last cited, however, the principal issue was whether the appellants had been deprived of hearing on their claim to inherit by establishing the interest of the previously deceased spouse in the property left by the decedent. The opinion indicates that the allegations of a petition which set forth the claim of that interest, although later withdrawn, and the fact that the spouses died but four months apart raised an issue which should have been tried. [8] In this case 31 years separated the death of the respective spouses. No attempt was made to show that all or any of the personalty could be traced to the earlier estate. The evidence referred to fails to sustain a finding that the items referred to were either the separate property of the predeceased husband (§ 229), or community property at his death (§ 228). On failure of such proof the personalty should devolve as the separate property of decedent.
The judgment is reversed with directions to enter findings of fact and conclusions of law and judgment in accordance with the views herein expressed.
Sullivan, P.J., and Molinari, J., concurred.
Respondents' petition for a hearing by the Supreme Court was denied June 8, 1966.
NOTES
[1] Probate Code section 231 provides in part: "If the decedent leaves no one to take his estate or any portion thereof under the laws of this State, the same escheats to the State as of the date of the death of the decedent." All further references are to sections of the Probate Code unless otherwise noted.
[2] Section 229 provides: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation."