[No. A028703. First Dist., Div. Two. June 26, 1986.]

Estate of GLADYS GRACE McINNIS, Deceased.
LILA E. SMITH, Petitioner and Respondent, v.
VIRGINIA SYLVESTER, Individually and as Administrator, etc., et al.,
Claimants and Appellants.

**COUNSEL**

Donavon R. Marble for Claimants and Appellants.

Lino M. Guslani and Burton McGovern for Petitioner and Respondent.

**OPINION**

**ROUSE, J.**—This is an appeal from a judgment determining heirship in the estate of Gladys McInnis and ordering that one-half of her net estate be distributed to the sister of her predeceased husband and that the remaining one-half be distributed in equal shares to the decedent's three nieces, the appellants herein.

The pertinent facts are undisputed: The decedent, Gladys McInnis, died intestate on February 28, 1983. She had been married to Lester McInnis from 1930 until the date of his death in 1971. Neither Gladys nor Lester was ever married to anyone else, and neither of them ever had issue, either as a result of their marriage or otherwise.

When Lester McInnis died intestate in 1971, his estate passed to his wife, Gladys McInnis. When Gladys later died intestate in 1983, her estate consisted entirely of community property acquired during her marriage to Lester McInnis. Gladys was survived by no blood relatives other than the three appellants, who are the daughters of a previously deceased sister of Gladys. The sole surviving blood relatives of Gladys McInnis's predeceased husband,

Lester McInnis, were his sister, respondent Lila Smith, and her daughter, Vivian Muffley.

Lester McInnis and his sister, respondent Lila Smith, had been alienated from one another since 1943. During an incident which took place shortly after the death of Lester and Lila's mother in 1943, Lila told Lester that she felt that she was entitled to a sum of money in her mother's bank account. Lester refused to give her the money and became enraged. During the ensuing 28 years ending with Lester's death in 1971, he and his sister neither saw nor communicated with each other in any way with the sole exception of one telephone call by Lila in 1957 to inform Lester of a cousin's death. Also, there was no contact between Lila and her brother's wife, Gladys McInnis, with the exception of one occasion, shortly after Lester's death, when Lila telephoned Gladys to offer her condolences.

Gladys McInnis had a close relationship with the appellants, her three nieces, and during the twelve-year period between Lester's death in 1971 and Gladys's death in 1983, appellants frequently visited Gladys and performed various services for her.

In her petition to determine heirship, respondent Lila Smith claimed that, under the laws of intestate succession, she was entitled to that portion of decedent Gladys McInnis's estate which had been acquired from Gladys's predeceased spouse, Lester. Appellant, Virginia Sylvester, in her capacity as administrator of the estate, took the contrary position and alleged that under the applicable statute, former Probate Code section 229, she and her two sisters were entitled to the decedent's entire estate. She also alleged that principles of equity and estoppel compelled such a result.

The trial court found in favor of respondent, Lila Smith, determining that under former Probate Code section 229, she was entitled to one-half of the decedent's net estate, since the entire estate was community property of the decedent and her predeceased husband, Lester McInnis, and one-half of the estate, therefore, was attributable to him. The trial court also concluded that Lila Smith was not estopped or precluded by principles of equity from claiming her interest in the estate. The decedent's three nieces filed a timely notice of appeal from the judgment determining heirship.

## I.

Appellants' first contention is that the trial court erred in its construction of former Probate Code section 229. The statute in question, as it read on the date of decedent Gladys McInnis's death, provided, in pertinent part, as follows: "(a) If the decedent leaves no living spouse or issue and

there are issue of the decedent's predeceased spouse, the portion of the decedent's estate attributable to the decedent's predeceased spouse . . ." shall go to the issue of the predeceased spouse and, in the absence of any such issue, shall go to other designated relatives of the predeceased spouse. (Stats. 1980, ch. 136, § 2, p. 320.) Appellants argue that under the literal wording of this statute, the fact that Lester McInnis never had issue at any time in his life precludes any of his relatives from sharing in any part of the estate of Gladys McInnis. Respondent takes the position that, although the language of the statute, arguably, is somewhat ambiguous, any such ambiguity must be resolved in a manner consistent with the history of the statute and with the clear intent of the Legislature. Further, she points out that appellants' proposed construction of the statute would lead to an absurd result which the Legislature could not have intended. We conclude that respondent is correct and affirm the judgment.

Former Probate Code section 229 can properly be understood when viewed as part of an ongoing legislative scheme, dating back to 1880, which was designed to prevent property from escheating to the state in instances where a widow or widower died intestate and without a spouse or relatives and the estate contained property obtained from a predeceased spouse who had relatives still living. The original predecessor of the statute here in question was subdivision 9 of Civil Code section 1386. (Stats. 1880, ch. 115, § 1, p. 14.) It provided that where a widow or widower died intestate and without kindred and his or her estate or any portion thereof was community property of the decedent and a predeceased spouse, such property should go to certain designated relatives of the predeceased spouse, if they were living, in the following order of preference: to the predeceased spouse's father, mother, brothers and sisters and lawful issue of any deceased brothers and sisters.

The statute remained unaltered until 1905, when subdivision 9 of Civil Code section 1386 was renumbered subdivision 8 and a significant oversight was corrected: issue of the predeceased spouse, who had not been previously included among the relatives entitled to share in the decedent's property, were now not only included but given the preferential position. (Stats. 1905, ch. 449, § 1, pp. 607-608.) At that time the statutory provision was also enlarged to apply, not only to community property of the decedent and a predeceased spouse, but also to property which had previously been the separate property of the predeceased spouse. (*Ibid.*) One final change of significance was made: whereas the original statute had provided that the relatives of the predeceased spouse would share in the estate when the decedent left no "kindred" (Stats. 1880, ch. 115, § 1, p. 14), the 1905 version substituted "issue" for "kindred." (Stats. 1905, ch. 449, § 1, p. 608.) Thus, what could be viewed as "a startling alteration in the rules

of descent" took place. (Ferrier, *Rules of Descent Under Probate Code* (1937) 25 Cal.L.Rev. 261, 262.) When a widow or widower died without issue, all of the estate which had been community property went to the designated relatives of the predeceased spouse. The 1905 version of the statute thus "went to the extreme of taking all the property which had been community property of the decedent and the predeceased spouse away from such close relatives of the decedent as his own parents or brothers and sisters and giving it all to the same relatives of the predeceased spouse." (Ferrier, *Rules of Descent Under Probate Code, supra,* at p. 262.)

The Legislature permitted the statute to remain in this form until 1907, when subdivision 8 of Civil Code section 1386 was amended to provide that when a widow or widower died without issue, the portion of the estate which had been community property of the decedent and a predeceased spouse would go to the children of the predeceased spouse and to their descendants by right of representation. (Stats. 1907, ch. 297, § 1, p. 567.) In the event that the predeceased spouse had no living children or descendants of such children, the property was divided equally between designated relatives of the decedent and of the predeceased spouse. (*Ibid.*) Under the 1907 amendment, property in the estate of the decedent was permitted to go exclusively to relatives of the predeceased spouse only if it had been the separate property of the predeceased spouse or if, as just noted, the predeceased spouse left issue. (*Ibid.*)

The next significant event in the life of this statutory scheme occurred in 1930. As we have noted, from the enactment of the original statute through its amendment in 1905 and 1907, it had always applied only to a decedent who was "a widow or widower" and died intestate leaving no kindred (in the original version) and no issue (in the later versions). In 1930 the California Supreme Court decided *Estate of McArthur* (1930) 210 Cal. 439, 445-448 [292 P. 469, 72 A.L.R. 1318], wherein the court held that the terms "widow" and "widower," as employed in the statute, included individuals who had remarried following the death of a former spouse. In 1931 the Legislature responded by conforming the legislation to the Supreme Court's interpretation. Subdivision 8 of Civil Code section 1386 was repealed and reenacted as sections 228 and 229 of the newly created Probate Code. (Stats. 1931, ch. 281, p. 597.) Both statutes now spoke in terms of a "decedent" who died intestate and without issue. Section 228 dealt with the situation where all or a portion of the decedent's estate was community property of the decedent and a predeceased spouse, and section 229 dealt with the situation where all or a portion of the decedent's estate was separate property of a predeceased spouse. (*Ibid.*) The effect of this legislative change was drastic. The surviving spouse of the decedent was now excluded from any share in that portion of the estate of his or her deceased spouse which

was the community or separate property of a prior marriage by the deceased spouse.

In 1939, this inequity created by the 1931 legislation was rectified, and both sections 228 and 229 of the Probate Code were amended to provide that it was only in the event that a decedent died intestate leaving "neither *spouse* nor issue" that relatives of the predeceased spouse would share in that portion of the estate which was community property or separate property of the predeceased spouse. (Stats. 1939, ch. 1065, §§ 1 & 2, pp. 2992-2993; italics supplied.) Under the 1939 version of the statute, *all* of the property which had been community property of the decedent and a predeceased spouse then went to the issue of the predeceased spouse, if any were living. If no such issue existed, the property in question was divided equally between designated relatives of the decedent and of the predeceased spouse. (Stats. 1939, ch. 1065, § 1, p. 2992.) In the case of property which had been the separate property of a predeceased spouse, such property then went solely to designated relatives of the predeceased spouse. (Stats. 1939, ch. 1065, § 2, pp. 2992-2993.)

The next significant amendments to sections 228 and 229 of the Probate Code occurred in 1979. (Stats. 1979, ch. 298, §§ 1 & 2, pp. 1109-1110.) Section 228 was then amended to read, in pertinent part, as follows: "(a) If the decedent leaves no living spouse or issue and there are issue of the decedent's predeceased spouse, the portion of the decedent's estate attributable to the decedent's predeceased spouse shall go in equal shares to the children of the predeceased spouse and their descendants by right of representation, and if none, *then one-half of such portion goes to the parents* of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the predeceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the predeceased spouse and to their descendants by right of representation." (Italics added.)

Subdivision (b) of the 1979 version of section 228 defined the "'portion of the decedent's estate attributable to the decedent's predeceased spouse'" as one-half of the community property which the decedent had acquired by virtue of the death of the predeceased spouse. (Stats. 1979, ch. 298, § 1, pp. 1109-1110.)

Section 229 was simultaneously amended to provide, in pertinent part, that "(a) If the decedent leaves no living spouse or issue and there are issue of the decedent's predeceased spouse, the portion of the decedent's estate

attributable to the decedent's predeceased spouse shall go in equal shares to the children of the predeceased spouse and to their descendants by right of representation, and if none, then to the parents of the predeceased spouse, in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the predeceased spouse and to their descendants by right of representation."

According to the Bill Digest prepared by the Assembly Committee on Judiciary, section 229 was intended as nothing but a restatement of the existing law. However, the amendment to section 228 was intended to provide that issue of a predeceased spouse would be limited to one-half of the community property in the decedent's estate, whereas they were previously entitled to all of the community property when the decedent died intestate and without spouse or issue. Unfortunately, the 1979 amendment to section 228 was worded in such a manner that only one-fourth (one-half of the one-half) of the community property would go to the predeceased spouse's parents or collateral heirs if the predeceased spouse had no issue. (See emphasized language in 1979 version of § 228, subd. (a), *ante* at p. 954; 2 Estate Planning and Cal. Probate Reporter (Cont.Ed.Bar 1981) pp. 23-24.)

In 1980, the Legislature repealed former Probate Code section 228 and consolidated former sections 228 and 229 into one statute (Prob. Code, § 229). (Stats. 1980, ch. 136, §§ 1 & 2, pp. 320-321.) Subdivision (a) of the new section 229 was identical to subdivision (a) of the 1979 version of section 229. The 1980 version of subdivision (a) of section 229 thus not only eliminated the inequity created by the 1979 version of subdivision (a) of former section 228, but provided that in the event the decedent left no living spouse or issue, that portion of the decedent's estate attributable to the decedent's predeceased spouse would go *entirely* to the heirs of the predeceased spouse, regardless of whether the property in question was derived from the separate or community property of the predeceased spouse. In terms of community property, the portion of the decedent's estate attributable to the decedent's predeceased spouse was defined under subdivision (b)(1) of the 1980 version of section 229 as including "One-half of the community property in existence at the time of the death of the predeceased spouse."

The 1980 version of former section 229 was the controlling statute on the date of the decedent's death in February 1983.[1]

---

[1] In 1983, former Probate Code section 229 was repealed and replaced, effective January 1, 1985, by Probate Code section 6402.5. (Stats. 1983, ch. 842, §§ 19 & 55, pp. 3024 & 3082.) The new statute made certain changes of substance, including, among other things, the fact that section 6402.5 applies only to real property and only in instances where the predeceased spouse died no more than 15 years before the decedent.

Appellants point out that subdivision (a) of the 1980 version of section 229 commences with the language "If the decedent leaves no living spouse or issue *and* there are issue of the decedent's predeceased spouse" (italics added) and that the statute then goes on to state that in that instance, the portion of the decedent's estate which consists of community property attributable to the death of the predeceased spouse goes to the issue of the predeceased spouse "and if none," to various other designated relatives of the predeceased spouse. They contend that the inclusion of the word "and" in the first clause of subdivision (a) is crucial and demonstrates that the Legislature intended that two separate and independent events must have occurred in order for the remaining provisions of the subdivision to apply: (1) the decedent must have died intestate and without living spouse or issue and (2) there must have been issue of the predeceased spouse. They acknowledge the fact that the statute goes on to specify that, in the absence of surviving issue of the predeceased spouse, the property in question shall be divided among various other designated relatives of the decedent's predeceased spouse. However, with admirable, if somewhat misguided, tenacity, they claim that the various portions of the statute can be reconciled with one another by construing the reference to issue in the first phrase of the statute to mean only that the predeceased spouse must have had issue at some point in time in order for any of his relatives to be eligible to succeed to that portion of the decedent's estate which consists of community property which the decedent acquired by virtue of the death of the prior spouse.

This argument is strained and unpersuasive. We are well aware of the checkered history of the legislative scheme here involved and of the various inequities which have been created, at one time or another, either by legislative amendment or judicial construction. One legal commentator furnished an accurate description of former Probate Code section 229 as it read on the date of decedent Gladys McInnis's death: "Through a series of poorly drafted statutes, California has developed an almost incomprehensible rule for intestate succession if a widow or widower dies without either children or a new spouse." (Bruch, *The Definition and Division of Marital Property in California* (1982) 33 Hastings L.J. 771, 868-869.) While we agree with such characterization of the legislative scheme throughout the course of its various transmogrifications, we find that, in this instance, it is unnecessary for us to further muddle this area of the law by adopting appellants' proposed interpretation of the statute.

Had the Legislature intended former Probate Code section 229 to create rights of succession only in favor of the relatives of a predeceased spouse who, at one point in time, had a child, the first clause of subdivision (a) would not have been phrased in the present tense: "there *are* issue of the

decedent's predeceased spouse"; but would have said that there "were" or "were at any time" issue of the decedent's predeceased spouse. (Italics added.) The use of the word "are," followed immediately by the directive that such issue shall take, in preference to all others, that portion of the decedent's estate which consisted of community property which the decedent acquired by virtue of the death of the predeceased spouse, indicates that the Legislature had in mind issue who were alive on the date of the decedent's death.

Appellants' proposed construction of the statute would lead to absurd results: for instance, if the decedent's predeceased spouse had, at some point in time, fathered an illegitimate child who died within hours of his or her birth, the collateral relatives of the predeceased spouse would be entitled to the community property of Gladys McInnis's estate, whereas they would otherwise be entitled to no such interest. While the Legislature may have demonstrated considerable ineptitude in the enactment and amendment of the predecessor statutes to the 1980 version of former section 229, we cannot believe it intended that the statute be construed in the manner suggested by appellants. The courts have consistently held that the legislative provisions which we have just reviewed represent a consistent attempt by the Legislature to work out "*a reasonable, consistent scheme of distribution* wherein upon the death of a decedent intestate without issue, instead of the whole property going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived." (*Estate of Rattray* (1939) 13 Cal.2d 702, 713 [91 P.2d 1042], italics supplied; to the same effect see *Estate of Westerman* (1968) 68 Cal.2d 267, 271-272 [66 Cal.Rptr. 29, 437 P.2d 517]; *Estate of Hoegler* (1978) 82 Cal.App.3d 483, 487-488 [147 Cal.Rptr. 289].)

In this instance, we cannot agree with appellants that the language of the first clause of former section 229 is susceptible to their proposed construction. It is more reasonable to interpret the language in question as meaning that if issue of a predeceased spouse were living on the date of the decedent's death, they were entitled to first preference in the distribution of that portion of the decedent's estate which was acquired by the decedent as a result of the death of the predeceased spouse. In any event, even if there were some ambiguity in the language of the statute, it is the settled rule that any such ambiguity, and even the literal language of a statute, must give way to the Legislature's intent and must also be so construed as to avoid an absurd result. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673-674 [56 Cal.Rptr. 265, 423 P.2d 193].)

In this instance, the language upon which appellants premise their argument was added by the 1979 amendment to former section 228 and was

retained when that statute was repealed and incorporated into a newly created section 229 in 1980. The legislative intent behind the 1979 amendment to former section 228 is known to us, since, as previously noted, it is set forth in the Bill Digest prepared by the Assembly Committee on Judiciary. The purpose of the amendment was to limit issue of a predeceased spouse to one-half of the community property in the decedent's estate. The amendment in question was not intended to result in the bizarre alteration in the rules of succession suggested by appellants.

For these reasons, we conclude that the trial court correctly rejected appellants' proposed construction of former Probate Code section 229 and properly divided the decedent's estate, which consisted entirely of community property of decedent and her predeceased husband, Lester McInnis, in such a manner that appellants were entitled to one-half of the estate and respondent was entitled to the remaining one-half.

## II.

Appellants' final argument is that, since a probate proceeding is equitable in nature, the trial court should have applied principles of estoppel and equity in order to award the entire estate to them. They base this argument upon the undisputed evidence that respondent Lila Smith had been estranged from her brother, Lester McInnis, and from his wife, decedent Gladys McInnis, since 1943, whereas appellants had maintained a close relationship with the decedent and had performed various services for her for a period of more than 10 years immediately prior to her death.

Appellants rely upon *Estate of Blume* (1966) 241 Cal.App.2d 496 [50 Cal.Rptr. 622], in support of the proposition that estoppel may be successfully invoked against former Probate Code section 229 claimants. However, that case is inapposite. There, the appellate court held only that certain property in the decedent's estate, which previously had been the separate property of her predeceased husband, was not subject to former section 229 because it had gone to certain siblings of the husband following his death and it was these siblings who had then deeded the property to the decedent. (*Id.*, at pp. 499-501.) Therefore, the court concluded that section 229 was inapplicable because the property in question had not come to the decedent by virtue of her husband's death. (*Ibid.*)

We agree with respondent that the correct rule is that principles of equity cannot be used as a means to avoid the mandate of a statute. (*Lass* v. *Eliassen* (1928) 94 Cal.App. 175, 179 [270 P. 745]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 3, pp. 5230-5231.)

Moreover, in this instance, the evidence falls short of establishing that it was respondent Lila Smith who was solely or even primarily responsible for the regrettable rift which arose between her and her brother and his wife in 1943. To the contrary, as far as can be determined from the record, respondent may have had a reasonable basis for claiming entitlement to certain funds in her mother's bank account, and it may well have been her brother, Lester, who behaved unreasonably in becoming enraged and thereafter estranged from respondent. The record does show that respondent was the only one who later attempted to reestablish contact with Lester or with his wife, the decedent, and that respondent telephoned Lester upon one occasion and Gladys upon another.

Under the circumstances, the trial court's finding that respondent was not estopped or precluded by principles of equity from claiming her interest in the decedent's estate was correct and must be upheld.

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 10, 1986.