[Civ. No. 11801. Third Dist. July 17, 1968.]

Estate of JOHN F. ECKER, Deceased. BERNICE SCHWARTZ, Plaintiff and Respondent, v. WALTER N. ECKER, Individually and as Administrator, etc., et al., Objectors and Appellants.

Louis T. Arbios, Forrest E. Macomber and A. Grant Macomber for Objectors and Appellants.

Charles M. Gore for Plaintiff and Respondent.

PIERCE, P. J.—The appeal is from an order in proceedings to determine heirship in the estate of the above-named decedent who died intestate. The order determined that

respondent Bernice Schwartz, stepdaughter of decedent, only daughter and sole heir of his predeceased wife Mabel, was entitled to distribution of the entire estate of said decedent under the provisions of Probate Code section 228.[1] The order was made on petition of Bernice Schwartz. The blood relatives of decedent, represented by appellant Walter N. Ecker, individually and as administrator of the estate of decedent John F. Ecker, filed a counterpetition. Walter Ecker was a brother of decedent. The other relatives are siblings and children of deceased siblings. They based their claim upon an agreement between decedent during his lifetime and respondent Bernice Schwartz. By the agreement Bernice, in consideration of the sum of $10,000 paid by John F. Ecker, released to him an interest in certain property which in the probate of the will of Mabel Ecker had been claimed as part of her estate. ██ The question raised by the counterpetition of appellant was whether the agreement approved by order of the probate court in Mabel Ecker's estate and a release and disclaimer given thereunder were intended to reach only the interest of the estate of Mabel Ecker or whether they were intended to cover the rights of Bernice as an individual and to include a waiver of her rights as an heir of her stepfather in the event he died intestate.

As stated, the probate court resolved that question in favor of respondent Bernice Schwartz. We hold the ruling to be correct. Honorable Thomas B. Quinn, Judge of the Superior Court of San Joaquin County, who presided at the hearing and made the order appealed from, has written a comprehensive opinion. We adopt it as the opinion of this court with omissions shown and with interpolations bracketed in.

"[I]n the course of the probate of the estate of Mabel Cordelia Ecker it appeared that most of the property belonging to John F. Ecker and Mabel Cordelia Ecker was held by them in joint tenancy. Thereafter Letters Testamentary were issued to Bernice Schwartz, the daughter of Mabel Cordelia Ecker, and the stepdaughter of John F. Ecker, in October of 1961. Then, in March of 1962, no inventory having been filed, Mrs. Schwartz filed a petition directing John F. Ecker (the second decedent) to appear in court for the purpose of rendering a full account of the property belonging to the estate of Mabel

---

[1]That section provides that descent of property of a decedent's estate which went to decedent "by virtue of its community character on the death of [a predeceased] spouse" or "by right of survivorship in a . . . joint tenancy between such spouse and the decedent" is to "the children of the deceased spouse."

Cordelia Ecker. A citation [was] issued . . . [then] dropped from the calendar. The agreement of compromise and the petition and order with respect thereto were finalized in June of 1962 and shortly thereafter, in July of 1962, the Release and Disclaimer in question was executed. It appears in the Release and Disclaimer that the parties owned certain real property and corporate stock as joint tenants, and also as community property a painting and contracting business then being operated by Mr. Ecker on a parcel of real property owned by the parties.

"Counsel for petitioner suggests that in order to determine what the $10,000 mentioned in the Release and Disclaimer was intended to cover, it will be necessary to examine as an integrated whole the 'Agreement to Establish Interest of Estate in Community Property,' the 'Petition for Approval of Compromise,' the 'Order Approving Compromise,' and the 'Release and Disclaimer.'

"The recitals in the agreement include the following:

" 'This Agreement made this 15th day of June, 1962, between Bernice Schwartz, *as Executrix of the will of* . . .

" 'Whereas, it is claimed by the Executrix [that an undivided one-half interest (of the property referred to above)] . . . belongs to said estate . . .

" [Subject to approval of the above entitled Court, the First Party shall receive and accept from the Second Party the sum of] '$10,000.00 in lawful money of the United States, in full satisfaction of the *interest of the above entitled estate* in the said community property.

" 'Second Party agrees to pay the First Party *as such Executrix* the said sum of $10,000.00.'

"The Petition for Approval of the proposed compromise recites in the prayer thereof, 'that petitioner be authorized to accept from John F. Ecker the sum of $10,000 in full settlement of all claim upon the part of petitioner, *as such executrix,* to property claimed to be community property of John F. Ecker and decedent.'

"The order approving compromise recites that it appears that $10,000 'is a reasonable sum to be accepted by petitioner, *as executrix* . . .' . . . '. . . and that upon payment of said sum the said John F. Ecker be released from *all claim upon the part of the above-entitled estate and of Bernice Schwartz, as executrix thereof* . . .'

"Attention is directed to the fact that apparently it is not until the language of the Release and Disclaimer is reached

that the name of Bernice Schwartz appears at any point herein in other than her representative capacity as executrix of the estate of her mother, and even in the release it is recited, 'Whereas, in consideration of the premises and of the payment of the sum of $10,000 by John F. Ecker to the Estate of Mabel Cordelia Ecker (for the benefit of Bernice Schwartz), which sum is paid by way of settlement of any claimed property interest said estate may have. . . .' The Release and Disclaimer then finally concludes that, 'Now, therefore, the said Bernice Schwartz disclaims any interest in said joint tenancy property hereinabove described, and also any further interest in the community property hereinabove described. Dated June 30, 1962.' Counsel for the Ecker family suggests that Mrs. Schwartz should be denied her statutory rights under Probate Code Section 228 because of the manner in which she proceeded during the probate of the will of her mother's estate, by asserting that she 'could have taken one-half of the property under her mother's will without making any claim to the joint tenancy. . . .' It should be noted that aside from the fact that certain joint tenancy real property and corporate stocks were itemized in the Release and Disclaimer, the record is silent as to any claims made as to the joint tenancy property. From the record it appears both in the agreement to establish interests and the petition for approval of this compromise that the parties agreed that 'the major portion of the items so claimed to be community property consist of the equipment of the business operated by the surviving husband . . .' and the order further recites that the money paid is 'in lieu of and in full settlement of decedent's interest in the community property of decedent and her surviving husband, John F. Ecker.

"Under these circumstances it would appear that the claim prosecuted by Bernice Schwartz as executrix of the Estate of Mabel Cordelia Ecker was limited to the assertion of an interest in community property and was not as suggested by counsel for the Ecker heirs a claim to the joint tenancy property which appears to have been listed in the Release and Disclaimer only as a matter of completeness and precaution.

"It would appear that the tenor of the four documents referred to is susceptible only of the construction that the entire dispute was conducted by Mrs. Schwartz in her representative capacity and that the subject matter thereof was the nature and extent of the community property involved and that the consideration of $10,000 was paid in settlement of the community property dispute. Under such circumstances there

would appear to be no further consideration given in connection with the disclaimer as to the joint tenancy property, nor any consideration for a waiver of any individual rights which Mrs. Schwartz may have had in her individual capacity, and likewise no consideration for any alleged bargain and sale transaction or conveyance to John F. Ecker of any inchoate or after-acquired rights under Probate Code Section 228.

"[T]he heirs of John F. Ecker rely heavily on *Estate of Anderson,* 160 Cal.App.2d 552 [325 P.2d 670]. In this connection it should be noted that the court in *Anderson* considered carefully the transfer of the property therein, reaching the conclusion that an absolute sale was intended by the parties, thus converting the California community property into Mr. Anderson's separate property and vesting the Iowa property absolutely in the heirs of Mrs. Anderson. It is significant to note that the conclusion of the court in this respect appears to be predicated to some considerable extent on a letter from the Iowa attorney quoted at page 554 in which the parties agreed to complete the transaction 'so that the California property would be yours absolutely.' In this factual setting it cannot be concluded that the court erred in its determination that Mr. Anderson acquired through the deed and assignment the potential rights of Mrs. Anderson's heirs under Probate Code Section 228. It should be observed in passing, however, that *Anderson* clearly points up the factual differences between that litigation and the problem involved here, referring in the process to *Sears* v. *Rule,* 27 Cal.2d 131 [163 P.2d 443]. Attention is directed to *Sears,* page 144, wherein it is pointed out that the principal purpose of the documents executed therein was: 'to settle a dispute over the estate of Mr. Weber and to prevent a will contest therein, and they disclose a typical case whereby the contestants relinquish their claims in the particular estate in return for a sum of money. The instruments refer repeatedly to plaintiffs' interest in the estate of Mr. Weber but make no mention whatsoever of plaintiffs' rights in the property of Mrs. Weber after her death. It would be unreasonable to hold that by these instruments plaintiffs purported to surrender not only their claims to the estate of Mr. Weber, but in addition, and by implication alone, their rights to succession in the estate of another person who was alive at the time.

"'Nor did the instruments make Mrs. Weber a purchaser of the property formerly held by her husband. Rather, they constituted a settlement or compromise of a rival claim

against the estate of Mr. Weber which permitted the property to go to Mrs. Weber in the same manner it would have gone if neither the threatened contest nor the settlement had ever existed. [P. 145.]'

"*Anderson,* in discussing both *Sears* and *Estate of Wilson,* 40 Cal.App.2d 229 [104 P.2d 716], points out that the *Sears* determination 'depended upon the intention of the parties as gleaned from the evidence and instruments themselves.' [P. 558, of 160 Cal.App.2d.] Following this well-recognized principle of construction it would appear that the intention of the parties here was not that Mrs. Schwartz in her individual capacity waived any future rights she might obtain under Probate Code Section 228 in the Estate of John F. Ecker, who was then a living person, nor would it seem to disclose any intention to sell to Mr. Ecker any such after-acquired interests.

"*Estate of Simmons,* 64 Cal.2d 217 [49 Cal.Rptr. 369, 411 P.2d 97], which is set forth at some length by the Ecker heirs, appears to shed little light on the problem involved, and aside from the determination that one of the assignments relied upon was void because of grossly unreasonable consideration, seems to be a direct application of the provisions of Probate Code Section 228 to the factual setting confronting the court.

"Finally, counsel for the Ecker heirs cite *Estate of Blume,* 241 Cal.App.2d 496 [50 Cal.Rptr. 622]. Specifically the limited rule relied upon may be summarized as follows: '[T]hat it is proper to deny those relatives of the previous deceased spouse, who have executed instruments which may be interpreted as conveying all interest then or thereafter to be acquired in certain property, from asserting such interest under the provisions of section 228, when property previously held by both spouses as community property is concerned, and possibly under the provisions of section 229 when the property was held as the separate property of the spouse first to die. [*Estate of Blume, supra,* p. 504.]'

"It should be noted in passing that in *Blume* the court discusses *Anderson, supra,* and flatly rejects the theory that the effect of a transfer of an interest in community property of a decedent and a survivor is to transmute the nature of the property from community to separate. So, also, *Blume* concludes that the 'limited rule' is inapplicable to the *Blume* facts since the granting instrument there was limited to the grantors' interest as heirs at law. It should be noted that here, too, the grant appears to be limited to the interest of the

estate of the previously deceased wife, Mabel Cordelia Ecker, in the assets which were the community property of Mabel and John Ecker. Obviously, then, the rule sought to be applied by the Ecker heirs does not appear to be applicable here.

"Finally, it should be observed in passing that Probate Code Section 228 expressly applies to all of the property that came to John F. Ecker by reason of its character as community or joint tenancy. By operation of the section in question, then it would appear that Bernice Schwartz, as the child of Mabel Cordelia Ecker, is entitled to the entirety thereof.

"For all of the reasons hereinbefore noted, the court concludes:

"1. That the intention of the parties derived from the four documents executed in June and July of 1962, was to settle a claim asserted by Bernice Schwartz in her representative capacity as executrix of the will of Mabel Cordelia Ecker, deceased, to the community property of John F. Ecker and Mabel Cordelia Ecker, and that no claim was then made by Bernice Schwartz to any joint tenancy property.

"2. The consideration paid by John F. Ecker in Settlement of the controversy was paid to Bernice Schwartz in her representative capacity and no further consideration flowed to Bernice Schwartz as an individual for any of the additional disclaimers made as to the joint tenancy property.

"3. That the entire transaction was in the nature of a settlement of a dispute and did not have the effect of a conveyance or grant of interests in property.

"4. That even if the language of the release and disclaimer be interpreted as having granting implications, had it been supported by consideration, the documents read together and the surrounding circumstances require the application of the doctrine of *Sears, supra,* which limits the holding of *Wilson* so as to permit an application of the *Wilson-Anderson* result only if the court can find that the real purpose of the document was to surrender possible future rights under Probate Code section 228. No such finding appears justifiable under the facts before the court."

The order appealed from is affirmed.

Friedman, J., and Regan, J., concurred.